IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KENNETH BUMGARDNER,

    Plaintiff,

v.

MARCUS TAYLOR, *et al.*,

    Defendants.

Civil Action No. RDB-18-1438

* * * * * * * * * * * * *

## **MEMORANDUM OPINION**

This case[1] arises from allegations that Baltimore City police officers unlawfully stopped Plaintiff Kenneth Bumgardner ("Bumgardner" or "Plaintiff") and used excessive force against him. Plaintiff has brought a 535-paragraph, 53-Count, 95-page Second Amended Complaint against Defendants Officer Marcus Taylor ("Taylor"), Officer Evodio Hendrix ("Hendrix"), Officer Maurice Ward ("Ward"), Sergeant Wayne Jenkins ("Jenkins"), Baltimore City State's Attorney Marilyn Mosby ("Mosby"), the Baltimore Police Department ("BPD"),[2] Major Ian Dombrowski ("Dombrowski"), and Deputy Police Commissioner Dean Palmere ("Palmere"), alleging state and federal constitutional rights violations, as well as Maryland state common law claims. Now pending are Defendant BPD's Motion to Dismiss (ECF No. 24); Defendant Dombrowski's Motion to Dismiss (ECF No. 25); and Defendant Palmere's Motion to Dismiss

---

[1] On July 31, 2018, this case was reassigned from the Honorable Marvin J. Garbis to the undersigned.
[2] Although the Plaintiff has named the "Baltimore City Police Department" as a Defendant, the Department refers to itself as the "Baltimore Police Department" in its memoranda. This Court will refer to it as such.

(ECF No. 26).³ The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018).

For the following reasons, Defendant BPD's Motion to Dismiss (ECF No. 24) is GRANTED. Specifically, Plaintiff's civil conspiracy claims asserted against the BPD pursuant to 42 U.S.C. §§ 1983, 1985, and 1988 are DISMISSED WITH PREJUDICE. Furthermore, Plaintiff's state law claims of assault, battery, intentional infliction of emotional distress, and violations of Article 24 of the Maryland Declaration of Rights asserted against the BPD are also DISMISSED WITH PREJUDICE. Finally, Defendant Dombrowski's Motion to Dismiss (ECF No. 25) is DENIED AS MOOT; and Defendant Palmere's Motion to Dismiss (ECF No. 26) is DENIED AS MOOT.

## BACKGROUND

In ruling on a motion to dismiss, this Court must accept the factual allegations in the plaintiff's complaint as true and construe those facts in the light most favorable to the plaintiff. *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). In this case, Plaintiff alleges that several Baltimore City police officers unlawfully stopped his vehicle and hit him with a blunt instrument, causing serious wounds. He accuses the non-officer Defendants with facilitating Plaintiff's illegal activity.

Bumgardner alleges that his encounter with police began on February 9, 2016 at about 6:30 p.m. (Second Amended Complaint at ¶ 93, ECF No. 79.) That evening, Bumgardner was

---

³ Also pending is Defendants Hendrix and Ward's Motion to Dismiss Counts 9-24 and 33 of Plaintiff's Amended Complaint (ECF No. 72). A Conference Call will be scheduled in the next week with defense counsel with respect to this pending motion. Also pending is Plaintiff's Motion to Renew Summons and Extend Time for Service on Defendant Marcus Taylor (ECF No. 39). Although Defendant Taylor has been served and has filed an Answer to the Complaint, Plaintiff's Motion (ECF No. 39) is GRANTED to the extent that it has not been rendered moot.

2

allegedly sitting in his vehicle at the 5000 block of Dickey Hill in Baltimore City and conversing with a friend standing nearby. (*Id.*) It is alleged that suddenly, Defendants Hendrix, Ward, Jenkins, and Taylor reversed their police vehicle into the front of Plaintiff's automobile. (*Id.* at ¶ 94.) Fearing for his life, Bumgardner attempted to flee. (*Id.* at ¶ 95.) As he fled, he was struck with a blunt object, causing him to fall and lose consciousness. (*Id.*) Bumgardner avers, upon information and belief, that witnesses saw Defendant Taylor strike him and cause the fall. (*Id.* at ¶ 96.)

Bumgardner alleges that the Defendants failed to provide adequate medical attention after his fall despite suffering serious injuries. He claims that Defendants Hendrix, Ward, Jenkins, and Taylor failed to call for medical assistance and declined to render any themselves for nearly two hours. (*Id.* at ¶ 97.) At about 8:17 p.m., one of the Defendant officers dispatched for paramedics and two emergency medical technicians responded. (*Id.* at ¶ 98.) When they arrived, Bumgardner refused medical treatment. (*Id.* at ¶ 99.) On the following day, he admitted himself to the Mercy Medical Center's Emergency Department, where physicians diagnosed him with a fractured mandible and sprained back. (*Id.*) Subsequently, on February 16, 2016, Dr. Bernard Krupp performed surgery to repair Bumgardner's fractured mandible (jaw). (*Id.* at ¶ 101.) Following this procedure, Bumgardner's jaw was wired shut for nearly two months. (*Id.*)

According to Bumgardner, the Defendants have provided a different account of his police encounter. Defendants allegedly claimed that they suspected that Bumgardner was partaking in an illegal drug transaction based upon their observation that Bumgardner had stopped his car next to an unidentified person. (*Id.* at ¶ 104.) According to this version of

events, Bumgardner placed his vehicle in reverse, drove down the 5000 block of Dickey Hill, and fled after police attempted to speak with him. (*Id.* at ¶ 105.) Defendant Taylor allegedly claimed that, after giving chase, Bumgardner fell and struck his head. (*Id.* at ¶ 106.)

Plaintiff alleges that the events of February 9, 2016 took place pursuant to a larger conspiracy perpetuated by members of the Baltimore Police Department's Gun Trace Task Force. To this end, the Second Amended Complaint recounts numerous illegal acts committed by the organization. (*Id.* at ¶¶ 47-79.) Bumgardner also recounts that all the officers allegedly on the scene of Bumgardner's encounter were the targets of a March 2017 Indictment, which brought charges against seven members of the Gun Trace Task Force for, *inter alia*, conspiracy to commit racketeering. (*Id.* at ¶¶ 87-91.) Defendants Hendrix, Ward, Jenkins, and Taylor either pled guilty to the charges pending against them or stood trial and were convicted. (*Id.* at ¶¶ 89-92.)

In the fifty-three counts enumerated in the Second Amended Complaint, Bumgardner alleges state and federal constitutional rights violations and state common law claims not only against Officers Marcus Taylor ("Taylor"), Evodio Hendrix ("Hendrix"), Maurice Ward ("Ward"), and Sergeant Wayne Jenkins ("Jenkins"), but also against Major Ian Dombrowski ("Dombrowski"), the Deputy Police Commissioner for the Baltimore Police Department, Dean Palmere ("Palmere"), the Baltimore Police Department ("BPD"), and the Maryland State's Attorney for Baltimore City, Marilyn Mosby ("Mosby"). The Second Amended Complaint is organized by Defendant, such that Counts 1-8 are asserted against Taylor; Counts 9-16 against Hendrix; Counts 17-24 against Ward; Counts 25-32 against Jenkins; Count 33 against Taylor, Hendrix, Ward, and Jenkins; Counts 34-39 against Mosby; Counts 40-44

4

against the BPD; Counts 49-50 against Dombrowski; and Counts 51-53 against Palmere.[4] As to Dombrowski and Palmere, it is alleged that both were engaged in a pattern of allowing the named officers to use excessive force and conduct unlawful arrests, and generally failed to investigate or discipline the named officers. Each individual Defendant is sued in his or her individual and official capacity. Defendants Baltimore Police Department, Ian Dombrowski, Dean Palmere, Evodio Hendrix, and Maurice Ward have moved to dismiss Plaintiff's complaint in whole or in part.[5] (ECF Nos. 24, 25, 26, and 72.)

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo

---

[4] Counts 45-48 were asserted against Sergeant Thomas Allers, who is no longer a Defendant in this case. (ECF No. 78.)
[5] These Motions were originally filed against the Amended Complaint (ECF No. 12), which was the operative Complaint. Having granted Plaintiff leave to file a Second Amended Complaint for the limited purpose of substituting the Defendant Marilyn Mosby in place of the Office of the State's Attorney for Baltimore City, these Motions are construed as filed against the Second Amended Complaint (ECF No. 78).

working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. Although a "plaintiff need not plead the evidentiary standard for proving" her claim, he may no longer rely on the mere possibility that he could later establish her claim. *McCleary-Evans v. Maryland Department of Transportation, State Highway Administration*, 780 F.3d 582, 584 (4th Cir. 2015) (emphasis omitted) (discussing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) in light of *Twombly* and *Iqbal*). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. While the plausibility requirement does not impose a "probability requirement," *Id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only

*allege facts* sufficient to *state* elements of the claim." (emphasis in original) (internal quotation marks and citation omitted)). In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679. "At bottom, a plaintiff must nudge [its] claims across the line from conceivable to plausible to resist dismissal." *Wag More Dogs, LLC*, 680 F.3d at 365 (internal quotation marks omitted).

## ANALYSIS

### I. Claims against the Baltimore Police Department.

The Second Amended Complaint brings five claims explicitly naming the BPD, all pursuant to 42 U.S.C. §§ 1983, 1985, and 1988: (1) Count 40, alleging that the BPD engaged in a civil conspiracy; (2) Count 41, alleging "Aider and Abettor" liability; (3) Count 42, alleging "Unconstitutional Custom or Practice"; (4) Count 43, alleging "Inadequate Training"; and (5) Count 44, alleging a "Failure to Supervise." Additionally, Plaintiff has sued several BPD employees in their official (as well as individual) capacities, thereby asserting Maryland state law claims against the BPD. *See Adams v. Ferguson*, 884 F.3d 219, 224-25 (4th Cir. 2018) (explaining that suits against state officers "generally represent only another way of pleading an action against an entity of which an officer is an agent" (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55, 98 S. Ct. 2018 (1978))).

The BPD seeks the dismissal of all claims against it brought pursuant to 42 U.S.C. §§ 1985 and 1988 and Maryland state law. (ECF No. 24.) The BPD also seeks dismissal of Count 40 in its entirety, arguing that (1) neither § 1983 nor § 1988 create causes of action for conspiracy; and (2) § 1985 conspiracy claims cannot be brought against municipal entities like

7

the BPD. (ECF No. 24-1, at 3.) In response, Bumgardner does not attempt to defend his decision to bring conspiracy claims pursuant to § 1983 or § 1988. Instead, he advances several arguments to support the proposition that the BPD can be held liable under a conspiracy theory pursuant to § 1985. (ECF No. 28-1, at 3.) He also asserts, contrary to overwhelming precedent, that the BPD is not immune from his state law claims. (*Id.* at 7.)

### A. Plaintiff's §§ 1983 and 1985 civil conspiracy claims asserted against the BPD are dismissed.

In Count 40 of the Second Amended Complaint, Plaintiff alleges that the BPD entered into a civil conspiracy with the Defendant members of the Gun Trace Task Force to "facilitate and enable [them] to hide the unit's use of robbery, drug dealing and violence." (ECF No. 79, at ¶ 406.) Specifically, Plaintiff alleges that the BPD failed to investigate the Task Force officers, continued to employ them, and failed to reprimand them despite credible allegations that they were engaging in a pattern of illegal activity. (*Id.* at ¶ 407.)

The BPD argues that it cannot be sued under § 1985 because neither the United States Supreme Court nor the United States Court of Appeals for the Fourth Circuit have "ever recognized a civil conspiracy claim against a municipal entity under § 1985." (ECF No. 24-1, at 5.) Alternatively, the BPD argues that even if it theoretically could be held liable under § 1985, the intracorporate conspiracy doctrine would foreclose liability under the facts as alleged by the Second Amended Complaint. (ECF No. 53, at 3-5.) As to Plaintiff's § 1983 claim, the BPD incorrectly asserts that Bumgardner cannot pursue a conspiracy claim under this provision. (ECF No. 24-1, at 3.)

Plaintiffs may pursue a civil conspiracy claim under both §§ 1983 and 1985. As the Fourth Circuit has explained, a plaintiff may establish a conspiracy under § 1983 by presenting

8

evidence that Defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Section 1985 explicitly creates a private cause of action for conspiracies to violate individuals' civil rights. Specifically, § 1985(3) creates a cause of action where "two or more persons . . . conspire . . . for the purposes of depriving, either directly or indirectly, any person . . . of the equal protection of the law, or of equal privileges and immunities under the law." To state a claim for conspiracy under § 1985, a plaintiff must allege sufficient facts to show "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Unus v. Kane*, 565 F.3d 103, 126 (4th Cir. 2009) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)).

Both §§ 1983 and 1985 establish liability for "persons" who deprive others of their constitutional rights. Prior to 1978, the Fourth Circuit had held that municipalities and their officers were not "persons" as those terms are used in both §§ 1983 and 1985. *Moye v. City of Raleigh*, 503 F.3d 631, 635 (4th Cir. 1974). In *Monell v. New York Department of Social Services*, 436 U.S. 658, 690, 98 S. Ct. 2018 (1978), the United States Supreme Court declared that municipalities and other local government units constituted "persons" under § 1983 and may be sued under that statute for enforcing policies or customs which deprive individuals of their constitutional rights. 436 U.S. at 690, 98 S. Ct. 2018. Based on the principles articulated in

*Monell*, this Court has determined that the BPD is a "person" subject to suit under § 1983. *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 548 (D. Md. 2003).

Neither the Supreme Court nor the Fourth Circuit have explicitly held that municipalities and local government units such as the BPD may be found liable under § 1985. Some courts have permitted plaintiffs to pursue § 1985 civil conspiracy claims against municipalities, applying the same definition of "person" to both §§ 1983 and 1985 claims. *See, e.g., Estate of Lagano v. Bergen County Prosecutor's Office*, 769 F.3d 850, 854 (3d Cir. 2014) (attributing the same meaning to the word "person" under both §§ 1983 and 1985); *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979) (assuming that the same definition of "person" applies under § 1983 and § 1985, and explaining that plaintiff could pursue § 1985 conspiracy claim against county under a *Monell* "custom or policy" theory), *cert. denied* 444 U.S. 980, 100 S. Ct. 483 (1979); *DiBartolo v. City of Philadelphia*, 99-CV-1734, 2000 WL 217746, at *6 (E.D. Pa. 2000) (explaining that plaintiff may sustain a § 1985 claim against the City of Philadelphia by alleging that the city engaged in an official custom or policy that resulted in discriminatory acts). Under the rationale of these cases, the BPD is a "person" under both §§ 1983 and 1985, and therefore may be sued under both statutes.

Assuming, without deciding, that the BPD constitutes a "person" which may be subject to suit under § 1985(3), dismissal of both Plaintiff's §§ 1983 and 1985 claims is warranted based on the application of the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine is rooted in the basic tenet that "you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Nelson*

*Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952), *cert. denied*, 345 U.S. 925 (1952). Under the intracorporate conspiracy doctrine, agents from a single legal entity are "legally incapable of conspiracy, which requires multiple parties acting together." *Lewin v. Cooke*, 28 F. App'x 186, 195 (4th Cir. 2002). This Court has previously held that, although originating in antitrust, the doctrine applies with equal force to claims asserted under both §§ 1983 and 1985. *See Burgess v. Baltimore Police Department*, RDB-15-0834, 2016 WL 795975, at *10-11 (D. Md. March 1, 2016) (dismissing plaintiff's § 1983 conspiracy claim asserted against defendant BPD police officers based on the application of the intracorporate conspiracy doctrine); *see also Kangalee v. Baltimore City Police Department*, RDB-12-01566, 2012 WL 5457231, at *7 (D. Md. Nov. 7, 2012) (holding that the BPD could not be sued under §§ 1985 and 1986 for engaging in an alleged conspiracy with Baltimore police officers because the BPD and its officers constitute the "same legal entity.").

The parties agree that this rule would ordinarily bar a civil conspiracy claim against the BPD arising from an alleged conspiracy between the Department and its officers. (ECF No. 28-1, at 5.) Bumgardner therefore argues that his case presents an exception to the rule. The Fourth Circuit has identified two exceptions to the intracorporate conspiracy doctrine: (1) when a corporate officer has an "independent personal stake" in achieving the illegal objectives of the corporation, *Greenville Publ'g Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974), and (2) when the agent's acts are unauthorized. *Buschi v. Kirven*, 775 F.2d 1240, 1252-53 (4th Cir. 1985). For the independent personal stake exception to apply, "a conspirator must possess a personal interest independent and 'wholly separable' from the interests of the corporation." *Walters v. McMahen*, 795 F. Supp. 2d 350, 359 (D. Md. 2011) (citing *Selman v. Am.*

*Sports Underwriters, Inc.*, 697 F. Supp. 225, 239 (W.D. Va. 1988)). Bumgardner argues that the doctrine should not prohibit his conspiracy claims because the Defendant officers' actions were "dominated by personal motives." However, in *Greenville*, the conspiracy provided a direct benefit to the corporation—the elimination of a competitor, and an independent benefit to the officer who had a business on the side that would also benefit from the removal of the competitor. 496 F.2d at 399-400. There is simply no way that the claims in this case can be interpreted to allege that the BPD gained any benefit from the alleged corruption of the named police officers. In this case, regardless of any personal motive on the part of the Defendant officers, Bumgardner fails to allege that the BPD took any actions for an independent benefit or received any benefit from the officers' actions. Further, regarding the second exception, Bumgardner claims that the Defendant officers were acting within their scope of employment. (ECF No. 28-1, at 6.) Therefore, neither exception will bar this Court's application of the intracorporate conspiracy doctrine in this case, and Plaintiff's §§ 1983 and 1985 claims asserted against the BPD are DISMISSED.[6]

### B. All state claims asserted against the BPD are dismissed.

The BPD seeks dismissal of all "official capacity" state law claims asserted against the individual officers, arguing that sovereign immunity shields it from these claims. (ECF No. 24-1, at 6.) In Response, Plaintiff relies on *Chin v. City of Baltimore* for the proposition that the BPD is "connected with the government of Baltimore City to such an extent as to prevent the

---

[6] Alternatively, this Court finds that the BPD, as a government entity, cannot exhibit the discriminatory animus required by § 1985(3) claims. *See Angelella v. Avvisato*, 2016 WL 4379098, at *12 (M.D. Pa. Aug. 17, 2016) (finding that § 1985 claim could not be asserted against a township because it was incapable of possessing an invidious discriminatory animus).

Police Department from asserting an Eleventh Amendment Immunity." 241 F. Supp. 2d at 547-48. Alternatively, Plaintiff argues that the Second Amended Complaint "calls into question" whether the BPD was acting in a governmental capacity when it allegedly conspired with its officers, thereby foreclosing it from asserting sovereign immunity. (ECF No. 28-1, at 9.)

Maryland law does not distinguish between a defendant's "individual capacity" and "official capacity" for purposes of state constitutional claims. *Ritchie v. Donnelly*, 324 Md. 344, 375, 597 A.2d 432 (Md. 1991). Nevertheless, to the extent that Plaintiff seeks to sue the BPD by asserting state law claims against individual officers in their official capacity, those claims are barred by the doctrine of sovereign immunity. It is well established that the BPD "enjoys the common law sovereign immunity from tort liability of a State agency." *Baltimore Police Dep't v. Cherkes*, 140 Md. App. 282, 313, 780 A.2d 410 (Md. 2001). This Court reaffirmed this rule in *Chin*, holding that that the BPD "enjoys sovereign immunity from actions for damages based on state common law torts or state constitutional torts," warranting dismissal of all state law claims against the Baltimore Police Department. *Chin*, 241 F. Supp. 2d at 548-49. Accordingly, Maryland state law claims brought against Baltimore Police officers in their "official capacity" are also barred by sovereign immunity, as they are akin to claims asserted against the BPD itself. *See Jones v. Chapman*, ELH-14-2627, 2015 WL 4509871, at *10 (D. Md. July 24, 2015) (recounting the holding of *Chin* and dismissing on sovereign immunity grounds state law claims brought against BPD Commissioner in his official capacity). As a result, the BPD is afforded state sovereign immunity against all Maryland state law claims asserted against it, including those brought against the individual officers in their official capacity.

Plaintiff's argument that the Defendant officers were not acting in a "governmental capacity" when they allegedly assaulted Bumgardner does not affect this analysis. "Under Maryland law, "[a] local government entity is liable for its torts if the tortious conduct occurs while the entity is acting in a private or proprietary capacity, but . . . it is immune from liability for tortious conduct committed while the entity is acting in a governmental capacity." *DiPino v. Davis*, 354 Md. 18, 47, 729 A.2d 354 (Md. 1999). This rule governs the immunity of local government agencies, which are afforded only limited common law immunity to suit. *Baltimore Police Dep't v. Cherkes*, 140 Md. App. 282, 314, 780 A.2d 410 (Md. 2001). There is no question that the BPD is a State agency which enjoys total immunity from both state common law and constitutional torts. *Id.* at 323. Moreover, even if Maryland law deemed the BPD a local government entity, rather than a State agency, there is no question that its supervision of police officers amounts to "acting in a governmental capacity." *See LaFon v. Baltimore County*, GLR-15-3216, 2016 WL 241376, at *2 (D. Md. Jan. 20, 2016) ("A local government acts in a governmental capacity when it runs and supervises a police department.") Accordingly, all state law claims asserted against the BPD are DISMISSED. Specifically, Plaintiff's claims of assault, battery, intentional infliction of emotional distress, and violations of the Maryland Declaration of Rights are DISMISSED as to the BPD.

## II. The Motions to Dismiss filed by Defendants Ian Dombrowski and Dean Palmere.

Defendant Ian Dombrowski had previously moved for the dismissal of Counts 51 and 53 of the Second Amended Complaint, arguing that they contain allegations which are virtually indistinguishable from Counts 49 and 50, respectively. (ECF No. 25-1, at 2-3.) Similarly, Dean Palmere had previously moved to dismiss the Second Amended Complaint as to him,

14

noting that it does not contain any allegations asserted against him. (ECF No. 26-1, at 3.) Plaintiff admits that his original Complaint contained these defects, but that the First Amended Complaint (and consequentially, the Second Amended Complaint) remedied them by removing the duplicate allegations identified by Dombrowski and asserting new allegations against Palmere. (ECF Nos. 29-1, at 3; ECF No. 30-1, at 3.) As Bumgardner has appropriately remedied the pleading deficiencies identified by Dombrowski and Palmere by filing a First and Second Amended Complaint, their Motions will be DENIED AS MOOT.

## CONCLUSION

For the reasons stated above, Defendant BPD's Motion to Dismiss (ECF No. 24) is GRANTED. Specifically, Plaintiff's civil conspiracy claims asserted against the BPD pursuant to 42 U.S.C. §§ 1983, 1985, and 1988 are DISMISSED WITH PREJUDICE. Furthermore, Plaintiff's state law claims of assault, battery, intentional infliction of emotional distress, and violations of Article 24 of the Maryland Declaration of Rights asserted against the BPD are also DISMISSED WITH PREJUDICE. Finally, Defendant Dombrowski's Motion to Dismiss (ECF No. 25) is DENIED AS MOOT; and Defendant Palmere's Motion to Dismiss (ECF No. 26) is DENIED AS MOOT.

A separate Order follows.

Dated: March 28, 2019

*/s/ Richard D. Bennett*
Richard D. Bennett
United States District Judge