IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KENNETH BUMGARDNER,         :

     Plaintiff,               :

v.                           :          Civil Action No. GLR-18-1438

MARCUS TAYLOR, et al.,        :

     Defendants.          :

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Officer Evodio Hendrix ("Officer Hendrix") and Officer Maurice Ward's ("Officer Ward") Motion to Dismiss Counts 9–24 and 33 of Plaintiff's Amended Complaint (the "Motion to Dismiss") (ECF No. 72) and Motion to Dismiss the Baltimore City Police Department's Cross-Claim (the "Motion to Dismiss Cross-Claim") (ECF No. 91). This case arises from Defendants and former Gun Trace Task Force ("GTTF") members Sergeant Wayne Jenkins ("Sergeant Jenkins") and Officers Marcus Taylor ("Officer Taylor"), Hendrix, and Ward's (collectively, "Officer Defendants") February 9, 2016 assault and arrest of Plaintiff Kenneth Bumgardner. The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant in part and deny in part the Motion to Dismiss and deny the Motion to Dismiss Cross-Claim.

# I.    BACKGROUND[1]

On February 9, 2016 around 6:30 p.m., Bumgardner was in the 5000 block of Dickey Hill Road, Baltimore, Maryland, sitting in his car and talking with a friend standing nearby. (2d Am. Compl. ¶ 93, ECF No. 79). "[S]uddenly and without warning," Officer Defendants reversed their police vehicle into the front end of Bumgardner's car. (Id. ¶ 94). "Unaware of what was occurring, and fearing for his life, [Bumgardner] fled from his vehicle." (Id. ¶ 95). As he fled, "[Bumgardner] was struck from behind with a blunt object, causing him to fall to the ground and lose consciousness." (Id.). Witnesses saw Officer Taylor strike Bumgardner "in the back from behind with a blunt object," which caused Bumgardner to fall to the ground. (Id. ¶ 96).

Officer Defendants then "failed to call for medical assistance," "failed to personally provide" medical assistance, and "left [Bumgardner] untreated for nearly two hours." (Id. ¶ 97). At about 8:17 p.m., one of Officer Defendants dispatched paramedics to the scene, and emergency medical technicians responded. (Id. ¶ 98). When they arrived, Bumgardner refused medical treatment. (Id. ¶ 99). The next day, Bumgardner admitted himself to Mercy Medical Center's Emergency Department, where physicians diagnosed him with a fractured jawbone and sprained back. (Id.). On February 16, 2016, Dr. Bernard Krupp performed surgery to repair Bumgardner's fractured jawbone.

---

[1] Unless otherwise noted, the Court takes the following facts from Bumgardner's Second Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)). The Court provided the factual background of this case in its March 28, 2019 Memorandum Opinion, (ECF No. 81). The Court repeats only facts relevant to the pending Motions.

(Id. ¶ 101). Following the surgery, Bumgardner's jaw was wired shut for nearly two months. (Id.)

On May 17, 2018, Bumgardner filed a fifty-three-count, 531-paragraph Complaint against Officers Taylor, Hendrix, and Ward; Sergeant Jenkins; Thomas Allers;[2] Major Ian Dombrowski ("Major Dombrowski"); Deputy Police Commissioner for the Baltimore Police Department Dean Palmere ("Deputy Commissioner Palmere"); the Baltimore Police Department ("BPD");[3] and the Office of the State's Attorney for Baltimore City (the "State's Attorney"). (ECF No. 1). Bumgardner filed an Amended Complaint against all Defendants on June 27, 2018. (ECF No. 12).

On February 5, 2019, Officers Hendrix and Ward filed their Motion to Dismiss Counts 9–24 and 33 of Plaintiff's Amended Complaint. (ECF No. 72). Bumgardner filed an Opposition on February 26, 2019. (ECF No. 75). On March 12, 2019, Officers Hendrix and Ward filed a Reply. (ECF No. 77).

On March 14, 2019, the Court granted Bumgardner leave to file his Second Amended Complaint and Jury Trial Demand (the "Second Amended Complaint"), (Mar. 14, 2019 Order, ECF No. 78), and the Clerk docketed it the same day, (ECF No. 79). Because the Second Amended Complaint only added State's Attorney Marilyn Mosby as

_____

[2] On December 5, 2018, Bumgardner voluntarily dismissed Allers as a Defendant. (ECF No. 67).

[3] On March 28, 2019, the Court granted BPD's Motion to Dismiss and dismissed Bumgardner's civil conspiracy and state law claims against BPD with prejudice. (Mar. 28, 2019 Mem. Op. at 2, ECF No. 81; Mar. 28, 2019 Order, ECF No. 82). The Court also denied as moot Major Dombrowski's Motion to Dismiss and Deputy Commissioner Palmere's Motion to Dismiss. (Mar. 28, 2019 Mem. Op. at 2; Mar. 28, 2019 Order).

a Defendant and removed the State's Attorney as a Defendant, the Court construed Officers Hendrix and Ward's Motion to Dismiss as filed against the Second Amended Complaint. (See Mar. 14, 2019 Order). The Second Amended Complaint alleges against Officers Hendrix and Ward: use of excessive force in the seizure of Bumgardner in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution under 42 U.S.C. §§ 1983, 1985, and 1988 (Counts 9 and 17)[4]; alternative use of excessive force in violation of the Fourth and Fourteenth Amendments under 42 U.S.C. §§ 1983, 1985, and 1988 (Counts 10 and 18); illegal arrest in violation of the Fourth and Fourteenth Amendments under 42 U.S.C. §§ 1983, 1985, and 1988 (Counts 11 and 19); false imprisonment in violation of the Fourth and Fourteenth Amendments under §§ 1983, 1985, and 1988 (Counts 12 and 20); assault (Counts 13 and 21); battery (Counts 14 and 22); intentional infliction of emotional distress (Counts 15 and 23); violation of Article 24 of the Maryland Declaration of Rights (Counts 16 and 24); and civil conspiracy under 42 U.S.C. §§ 1983, 1985, and 1988 (Count 33). (2d Am. Compl. ¶¶ 173–292, 353–56). Bumgardner sues Officers Hendrix and Ward in their individual and official capacities. (Id. ¶¶ 3–4). Bumgardner seeks compensatory and punitive damages as well as attorney's fees and costs. (Id. at 25–26).[5]

---

[4] The Second Amended Complaint uses Roman numerals to number the Counts. To conserve space, the Court uses Arabic numerals.

[5] Citations to page numbers for the Second Amended Complaint refer to the pagination the Court's Case Management/Electronic Case Files ("CM/ECF") system assigned.

On May 16, 2019, BPD filed its Answer, Affirmative Defenses, and Cross-Claim for Indemnification. (ECF No. 88). BPD brings its Cross-Claim against Officers Hendrix, Ward, and Taylor; and Sergeant Jenkins. (Cross-cl. ¶ 1, ECF No. 88). BPD seeks a declaration that under the Local Government Tort Claims Act (the "LGTCA"), Md. Code Ann., Cts. & Jud. Proc. ["CJP"] §§ 5-301 et seq. (West 2019), Article 15 of the FY 2017–2018 Memorandum of Understanding between the BPD and the Fraternal Order of Police ("MOU"), or both, it has no duty to indemnify Officer Defendants because the acts and omissions stated in the Second Amended Complaint, among other things, occurred "outside the scope of the officers' employment." (Id. ¶ 2).

On June 6, 2019, Officers Hendrix and Ward filed their Motion to Dismiss the Baltimore City Police Department's Cross-Claim. (ECF No. 91). BPD filed its Opposition on June 20, 2019. (ECF No. 92). On July 5, 2019, Officers Hendrix and Ward filed a Reply. (ECF No. 97).

## II. DISCUSSION

### A. Motion to Dismiss

#### 1. Rule 12(b)(6) Standard of Review

The purpose of a motion under Federal Rule of Civil Procedure 12(b)(6) is "to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain

statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of America, N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom. Goss v. Bank of America, NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But a court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

## 2. Analysis

At bottom, the Court concludes that it will not dismiss Bumgardner's excessive force, false arrest, and false imprisonment claims under § 1983 or his state law battery claim and state constitutional claim under Article 24 of the Maryland Declaration of Rights. The Court further concludes that it will dismiss Bumgardner's official capacity claims and civil conspiracy claim, as well as his state law assault and intentional infliction of emotional distress claims.

### a. § 1983 Claims[6]

Bumgardner brings his federal claims against Officers Hendrix and Ward under § 1983. A civil rights action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright, 510 U.S. at 271 (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). To state a claim under § 1983, a plaintiff must allege that: (1) a right secured by the Constitution or laws of the United States was violated; and (2) the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

---

[6] Bumgardner concedes that he cannot pursue claims against Officers Hendrix and Ward under § 1985. Bumgardner further concedes that § 1988 does not create a viable cause of action. Accordingly, the Court will dismiss the § 1985 and § 1988 claims against Officers Hendrix and Ward.

Bumgardner alleges excessive force, false arrest and false imprisonment, and civil conspiracy claims against Officers Hendrix and Ward under § 1983. The Court first addresses whether it should dismiss the official-capacity claims against Officers Hendrix and Ward, and then addresses Bumgardner's federal constitutional claims in turn.

### i    Official-Capacity Claims

Officers Hendrix and Ward argue for the first time in their Reply that the Court should dismiss all § 1983 claims asserted against them in their official capacities because Bumgardner fails to allege that they were final decisionmakers.

As a threshold issue, the Court must determine whether it will consider Officers Hendrix and Ward's argument. "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." United States v. Freeman, No. PWG-16-197, 2016 WL 6582645, at *4 (D.Md. Nov. 7, 2016) (quoting Clawson v. FedEx Ground Package Sys., Inc., 451 F.Supp.2d 731, 734 (D.Md. 2006)). It is, however, within the Court's discretion to consider such arguments. Clawson, 451 F.Supp.2d at 734. The ordinary rule is meant to address the situation where "[an] opposing party would be prejudiced by an advocate arguing an issue without an opportunity for the opponent to respond." Id. (alteration in original) (quoting United States v. Head, 340 F.3d 628, 630 n.4 (8th Cir. 2003)).

Here, Officers Hendrix and Ward informed Bumgardner's counsel via email before Bumgarder filed his Opposition that they would be withdrawing their original argument for dismissing the official capacity claims under Eleventh Amendment

immunity. (Defs.' Reply at 1 n.1, ECF No. 77). Officers Hendrix and Ward do not, however, indicate whether they informed Bumgardner that they intended to raise a new argument in their Reply. Nevertheless, Officers Hendrix and Ward filed their Reply on March 12, 2019, and Bumgardner has not moved for leave to file a surreply to address this argument. Accordingly, the Court will exercise its discretion and consider the new argument.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Defendants may be held liable in their official capacities under § 1983 "only when an injury was inflicted by a government's 'lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 121–22 (1988) (quoting Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978)). The government official being sued must have final policymaking authority for the governmental entity that he represents, and the entity's policy must be shown to have played a role in the constitutional violation. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Here, the Second Amended Complaint fails to allege that Officers Hendrix and Ward possessed any policymaking authority whatsoever. Bumgardner's failure to advance factual allegations demonstrating that Officers Hendrix and Ward are "final policymakers" warrants dismissal of the § 1983 claims asserted against them in their

official capacities. See Swagler v. Harford Cty., No. RDB-08-2289, 2010 WL 1923766, at *5–6 (D.Md. May 10, 2010) (dismissing § 1983 claims brought against police sergeant because the amended complaint failed to allege that the sergeant instituted any policies or procedures, but rather merely possessed "certain coordinating and decision-making authority over the troopers on patrol").

Accordingly, the Court will grant the Motion to the extent it seeks to dismiss the official-capacity § 1983 claims against Officers Hendrix and Ward. The analysis that follows applies only to the claims asserted against Officers Hendrix and Ward in their individual capacities.

## ii. Excessive Force

Bumgardner alleges that Officers Hendrix and Ward used excessive force against him in violation of the Fourth and Fourteenth Amendments when they rammed their police vehicle into his car and hit him with a blunt object. Officers Hendrix and Ward contend that Bumgardner fails to adequately state excessive force claims against them because Bumgardner alleges that Officer Taylor struck him and does not otherwise implicate Officers Hendrix and Ward in the excessive force allegations. Bumgardner counters that, at this stage in the litigation and due to the nature and timing of the incident, it would be unreasonable to require Bumgardner to plead with specificity which Defendant took which action. The Court agrees with Bumgardner.

The Fourth Amendment's prohibition against unreasonable seizures governs claims for the use of excessive force in effectuating an arrest or other seizure. Graham v.

Connor, 490 U.S. 386, 394–95 (1989). Because stopping or arresting an individual may involve some degree of physical force, the inquiry into whether the force was excessive considers "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 396–97.

The objective reasonableness standard requires weighing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Bailey v. Kennedy, 349 F.3d 731, 743 (4th Cir. 2003) (quoting Graham, 490 U.S. at 399). In conducting this analysis, the Court considers the "facts and circumstances" of a particular case, including: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight"; and (4) "[t]he extent of the plaintiff's injury." Id. (first alteration in original) (first quoting Graham, 490 U.S. at 396; and then quoting Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003)). To properly consider the reasonableness of the force employed, the Court "view[s] it in full context, with an eye toward the proportionality of the force in light of all the circumstances." Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 899 (4th Cir. 2016) (quoting Smith v. Ray, 781 F.3d 95, 101 (4th Cir. 2005)).

Here, Bumgardner alleges that Officer Defendants rammed their police cruiser into his vehicle suddenly and without warning. One of Officer Defendants allegedly

bludgeoned Bumgardner with a blunt object, sending him to the ground and causing a fractured jawbone and sprained back. Although Bumgardner's Second Amended Complaint does not specify who was steering the police vehicle, its factual allegations sufficiently indicate that Officers Hendrix and Ward shared some responsibility for the events that purportedly transpired. Moreover, although Bumgardner relies on witness testimony to conclude that Officer Taylor likely hit him on the back of the head, the Second Amended Complaint may be read to assert, in the alternative, that any one of the Officer Defendants struck him. The gaps in the narrative are not fatal to Bumgardner's claims as Officers Hendrix and Ward contend; no plaintiff who alleges that a police officer assaulted him in the sudden and violent manner alleged here can be expected to specify which officer drove the cruiser into him without warning or landed the knock-out blow from behind. Thus, taking the facts alleged as true, the Court concludes that Bumgardner plausibly states excessive force claims against Officers Hendrix and Ward.

Alternatively, Bumgardner may pursue his excessive force claim under a bystander liability theory. To succeed on a bystander liability theory, a plaintiff must demonstrate that a law enforcement officer: "(1) knew that fellow officers were violating [an individual's] constitutional rights by using excessive force; (2) had a reasonable opportunity to prevent such violations; and (3) chose not to act." Stevenson v. City of Seat Pleasant, 743 F.3d 411, 419 (4th Cir. 2014). To satisfy the pleading requirements for this claim, Bumgardner need only allege sufficient facts to permit the Court to infer that these elements are satisfied. Id. In Stevenson, the Fourth Circuit held that merely alleging

that the defendant officers were present and had allowed an unreasonable seizure to occur suffced to satisfy Rule 8's pleading requirements. See id.

Here, Bumgardner alleges that Officer Defendants drove an unmarked police vehicle into his car without warning. By alleging that Officers Hendrix and Ward failed to render medical assistance or contact paramedics for two hours, the Second Amended Complaint implies that these officers were on-scene throughout Bumgardner's police encounter. These allegations indicate that Officers Hendrix and Ward knew of their fellow officers' alleged misconduct and chose not to prevent or mitigate it. Although the Second Amended Complaint does not specifically allege that Officers Hendrix and Ward "allowed" the other officers to engage in misconduct, their alleged presence throughout the encounter and failure to render any medical assistance suffices, at this early stage, to permit Bumgardner to pursue his claim under a bystander liability theory.

The Court will, therefore, deny the Motion to Dismiss as to Counts 9, 10, 17, and 18.

### iii. False Arrest & False Imprisonment

Bumgardner alleges that Officers Hendrix and Ward falsely arrested and illegally imprisoned him in violation of the Fourth and Fourteenth Amendments when they detained him for nearly two hours without probable cause. Officers Hendrix and Ward argue that the Court should dismiss these claims because the Second Amended Complaint fails to plausibly allege that they took any action to cause Bumgardner's arrest. The Court is not persuaded by Officers Hendrix and Ward's argument.

Claims of false arrest and false imprisonment in violation of the Fourth Amendment share "the same elements." Whetstone v. Mayor of Baltimore City, No. ELH-18-738, 2019 WL 1200555, at *23 (D.Md. Mar. 13, 2019) (quoting Shiflett v. I.T.O. Corp. of Baltimore, No. 99-1379202, F.3d 260, 2000 WL 14214, at *4 n.5 (4th Cir. Jan. 10, 2000) (table)). Both require a "deprivation of the liberty of another without his consent and without legal justification." Shiflett, 2000 WL 14214, at *4. To state a claim for false arrest or false imprisonment, the plaintiff must allege that the defendants "in some way caused [his] arrest." Mauler v. Arlotto, No. RDB-18-1445, 2018 WL 4931488, at *3 (D.Md. Oct. 11, 2018).

Officers Hendrix and Ward rely on Mauler for the proposition that the Court should dismiss the false arrest and false imprisonment claims against them because Bumgardner fails to sufficiently allege that they took any action to cause his arrest. Mauler is readily distinguishable.

In Mauler, this Court determined that the plaintiff, Georgie Jessup Mauler, failed to state a claim for unlawful arrest against the defendants George Arlotto, the Superintendent of the Anne Arundel County Board of Education (the "Board"); Sarah Czach, Senior Manager of Investigations; and Doyle Batten, the Board's Supervisor of School Security. Id. at *1. Mauler alleged that the defendants had falsely arrested her in violation of the First, Fourth, and Fourteenth Amendments while she was singing protest songs on Board property and displaying a sign reading "AACPS is transphobic." Id. This Court observed that Mauler's complaint was "completely devoid of any factual

14

allegations concerning [Arlotto's] actions" on the day of the arrest. Id. at *3. The complaint merely stated that Mauler's arrest was "in full view of" Arlotto and that he "failed to prevent" it. Id. This Court also concluded that Mauler's complaint lacked sufficient factual allegations concerning Czach, as it merely alleged that she had observed Mauler's singing and that Mauler was arrested a short time later. Id. at *4.

Here, by contrast, Bumgardner alleges that Officers Hendrix and Ward were closely involved in his arrest. Bumgardner pleads that Officer Defendants abruptly slammed a police cruiser into his vehicle and knocked him to the ground. This is a far cry from the Mauler complaint, which merely alleged that two school board officers had observed the plaintiff from a distance and that, a short time later, a group of police officers arrested her. In this case, Bumgardner alleges that Officer Defendants caused his arrest and imprisonment by crashing into his vehicle and remaining near his wounded body for two hours without attempting to obtain medical assistance.

Thus, the Court concludes that these allegations suffice to state a claim for false arrest and false imprisonment against Officers Hendrix and Ward. Accordingly, the Court will deny the Motion to Dismiss as to Counts 11, 12, 19, and 20.

### iv.    Civil Conspiracy

Bumgardner alleges that Officer Defendants entered into a civil conspiracy with one another and other members of the GTTF to hide the unit's crimes, including robbery, drug dealing, and the use of violence. (2d Am. Compl. ¶ 354). Officers Hendrix and Ward advance two arguments for dismissing this claim: (1) Bumgardner fails to allege

sufficient facts to support this claim; and (2) the intracorporate conspiracy doctrine bars Bumgardner's claim. The Court agrees with Officers Hendrix and Ward's second argument.

The intracorporate conspiracy doctrine "is rooted in the basic tenet that 'you must have two persons or entities to have a conspiracy.'" Burgess v. Balt. Police Dep't, No. RDB-15-0834, 2016 WL 795975, at *10 (D.Md. Mar. 1, 2016) (quoting Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir. 1952)). The doctrine holds that "[a] corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." Id. (quoting Nelson, 200 F.2d at 914). Put differently, "agents from a single legal entity are 'legally incapable of conspiracy, which requires multiple parties acting together.'" Williams v. Mayor of Baltimore City, No. WMN-14-1125, 2014 WL 5707563, at *6 (D.Md. Nov. 4, 2014) (quoting Lewin v. Cooke, 28 F.App'x 186, 195 (4th Cir. 2002) (citation omitted)). "Although originating in antitrust, the doctrine applies with equal force to civil rights cases." Burgess, 2016 WL 795975, at *10 (quoting Buschi v. Kirven, 775 F.2d 1240, 1251 (4th Cir. 1985)).

Bumgardner concedes that the intracorporate conspiracy doctrine would typically preclude his civil conspiracy claim against Officers Hendrix and Ward. Nevertheless, Bumgardner argues that his claim falls under an exception to the general rule: "when a corporate officer has an 'independent personal stake in achieving the corporation's illegal objectives.'" Williams, 2014 WL 5707563, at *6 (quoting Greenville Publ'g Co. v. Daily

Reflector, Inc., 496 F.2d 391, 399 (4th Cir. 1974)). This exception applies when a conspirator has a personal interest "independent and 'wholly separable' from the interests of the corporation." Walters v. McMahen, 795 F.Supp.2d 350, 359 (D.Md. 2011) (quoting Selman v. Am. Sports Underwriters, Inc., 697 F.Supp. 225, 239 (W.D.Va. 1988)).

Here, Bumgardner contends that although Officers Hendrix and Ward were acting within the scope of their employment with BPD, their actions were "dominated by personal motives," thus falling under the independent personal stake exception. (Pl.'s Mem. Supp. Opp'n ["Pl.'s Opp'n"] at 12, ECF No. 75-1).[7] In support of his argument, Bumgardner points to factual allegations in the Second Amended Complaint regarding the former GTTF members' guilty pleas for criminal racketeering conspiracy before this Court. Bumgardner requests that the Court take judicial notice of the plea agreements Officers Hendrix and Ward signed, which state that they were acting to "enrich themselves." (Id. at 12). The Court declines to consider the plea agreements. Bumgardner fails to explain how the plea agreements are connected to the alleged misconduct involved in this case. The mere fact that Officers Hendrix and Ward pleaded guilty to crimes motivated by selfish interests does not support an inference that they were acting pursuant to an interest "wholly separable" from the interests of BPD when they engaged in the acts alleged in the Second Amended Complaint.[8]

---

[7] Citations to Bumgardner's Opposition refer to the pagination CM/ECF assigned.

[8] Even if the Court were to consider the plea agreements, their contents undercut Bumgardner's argument. The plea agreements state that BPD's purposes are "to protect

Thus, the Court concludes that the intracorporate conspiracy doctrine bars Bumgardner's civil conspiracy claim under § 1983. Burgess, 2016 WL 795975, at *10–11 (dismissing plaintiff's § 1983 conspiracy claim asserted against defendant BPD officers based on the application of the intracorporate conspiracy doctrine). Accordingly, the Court will grant the Motion to Dismiss as to Count 33.

### b.  State Law Claims[9]

### i.  LGTCA Notice Requirement

As a threshold matter, Officers Hendrix and Ward assert that the Court should dismiss all of Bumgardner's state law claims because he failed to comply with the LGTCA's notice requirement. The Court disagrees.

The LGTCA requires local governments to defend and indemnify their employees for the tortious acts they commit within the scope of their employment and without malice. CJP § 5-302; Ashton v. Brown, 660 A.2d 447, 465–66 (Md. 1995). The LGTCA applies to Maryland state constitutional claims and tort claims. Crystal v. Batts, No. JKB-14-3989, 2015 WL 5698534, at *8 (D.Md. Sept. 25, 2015). Under the LGTCA, local

and preserve life, protect property, understand and serve the needs of the Baltimore City's neighborhoods, and to improve the quality of life in Baltimore City." (Plea Agreement at 10, USA v. Kenton Gondo, et al., CCB-17-106 (July 21, 2017), ECF Nos. 158, 161). The purposes of the former GTTF members' conspiracy included "violating the legitimate purposes of the BPD in order to enrich themselves through illegal conduct." (Id.). The plea agreements contemplate that GTTF members entered into in a conspiracy that was separate and apart from BPD's legitimate objectives. They do not contemplate that BPD had an illegal objective, nor that Officers Hendrix and Ward had an independent personal stake in that objective.

[9] Bumgardner concedes that the one-year statute of limitations bars his state law assault claim and intentional infliction of emotional distress claim. Accordingly, the Court will dismiss Counts 13, 15, 21, and 23.

governments retain sovereign immunity, but they are required to insure their employees, to a limited extent, for the payment of any adverse money judgments. CJP § 5-303(a)(1), (b)(1)–(2).

The LGTCA generally provides that a plaintiff must give local government defendants notice of claims within 180 days of the injury. CJP § 5-304(a). The notice must be in writing; state the time, place, and cause of the injury; and be given in person or by certified mail to the county solicitor or county attorney. CJP § 5-304(b)(2), (3). The purpose of the LGTCA's notice requirement is to protect a government entity from "meretricious claimants and exaggerated claims by providing a mechanism whereby the municipality or county would be apprised of its possible liability at a time when it could conduct its own investigation." Williams v. Maynard, 754 A.2d 379, 385 (Md. 2000) (quoting Bartens v. Mayor of Baltimore, 446 A.2d 1136, 1138–39 (Md. 1982)).

Substantial compliance with the LGTCA's statutory notice requirements may suffice where the purpose of the notice requirement is fulfilled. Moore v. Norouzi, 807 A.2d 632, 642 (Md. 2002); Maynard, 754 A.2d at 385. Substantial compliance means giving "requisite and timely notice of facts and circumstances giving rise to the claim." Faulk v. Ewing, 808 A.2d 1262, 1272–73 (Md. 2002) (quoting Condon v. Univ. of Md., 632 A.2d 753, 760 (Md. 1993)). The plaintiff has the burden of demonstrating that he substantially complied with the notice requirement. See White v. Prince George's Cty., 877 A.2d 1129 (Md.Ct.Spec.App. 2005). A notice of claim which fails to identify

certain defendants nevertheless substantially complies with the LGTCA requirements if it describes the circumstances giving rise to a cause of action. See Burgess v. Balt. Police Dep't, No. RDB-15-0834, 2017 WL 4947004, at *9 (D.Md. Oct. 31, 2017) (holding that the plaintiff substantially complied with the LGTCA despite failing to name certain defendants in his notice of claim).

Here, it is undisputed that Bumgardner provided timely notice to the correct entity under the LGTCA. Bumgardner's notice stated the following:

> I seek damages for personal injuries and attendant losses related thereto, sustained by me on February 9, 2016 at approximately 8:40 p.m. These injuries and damages flowed from an interaction with Baltimore City Police Officers C. Watkins, ID #I560, and Det. M. Taylor, – ID # I725, and Sgt. W. Jenkins – ID #H383, at the location of the intersection of 2100 Tucker Lane and 5000 Dickey Hill Road in Baltimore City, Maryland.

(Defs.' Mot. at 21.)

Officers Hendrix and Ward argue that Bumgardner failed to substantially comply with the LGTCA notice requirements because his notice did not specifically identify them.

Officers Hendrix and Ward rely on Brown v. Baltimore Police Department, No. RDB-11-00136, 2011 WL 6415366 (D.Md. Dec. 21, 2011), for the proposition that Bumgardner's failure to name them requires dismissal of his state law claims against them. Officers Hendrix and Ward are mistaken. In Brown, the plaintiff had completely failed to provide written notice of any kind to the county solicitor. Id. at *13. This Court nevertheless looked to the plaintiff's Equal Employment Opportunities Commission

("EEOC") charge to determine whether it substantially complied with the LGTCA by notifying each defendant of the plaintiff's claims. Id. After finding that the EEOC charge did not name certain defendants, this Court dismissed the pending state law claims against them. Id.

The Court need not run such a fine-tooth comb through Bumgardner's timely submitted LGTCA notice. Because the plaintiff in Brown had failed to adhere to the requirements of Maryland state law, this Court was compelled to closely examine the contours of the EEOC charge provided in a federal forum. In this case, by contrast, Bumgardner presented his claim through the proper channels and provided sufficient information to place Officers Hendrix and Ward on notice of the pending claims. Moreover, this Court has once before permitted a plaintiff to pursue state law claims against defendants unnamed in an LGTCA notice. See Burgess, 2017 WL 4947004, at *9. Accordingly, this Court declines to dismiss Bumgardner's claims merely because he failed to name Officers Hendrix and Ward in his notice of claim.

### ii. Battery

Bumgardner alleges that Officers Hendrix and Ward "participated in" the act of striking him with a blunt object. (2d Am. Compl. ¶¶ 214, 274). Elsewhere in the Second Amended Complaint, Bumgardner states, based on the observations of witnesses, that Officer Taylor struck him. (Id. ¶¶ 96, 106). Under Maryland law, a "battery is a harmful or offensive contact with a person resulting from an act intended to cause the person such contact." Northfield Ins. Co. v. Boxley, 215 F.Supp.2d 656, 661 (D.Md.

21

2002) (citing <u>Saba v. Darling</u>, 575 A.2d 1240, 1242 (Md. 1990)). A battery requires "some positive or affirmative action on the part of the defendant." <u>Id.</u>

Echoing their arguments concerning Bumgardner's excessive force claims, Officers Hendrix and Ward contend that the Court must dismiss the battery claim against them because the Second Amended Complaint identifies Officer Taylor, not Officer Hendrix or Officer Ward, as the officer who landed the blow. They also fault the Second Amended Complaint for failing to make specific allegations about the degree to which Officers Hendrix and Ward were involved in the incident. For the reasons the Court discussed above with respect to Bumgardner's excessive force claims, these arguments are unavailing. Bumgardner's allegations, which describe the February 9, 2016 incident in detail and allege the involvement of Officers Hendrix and Ward, are sufficient at this early stage in the litigation. Accordingly, the Court will deny the Motion to Dismiss as to Counts 14 and 22.

### iii.    Article 24 of the Maryland Declaration of Rights

In the Second Amended Complaint, Bumgardner incorporates all allegations made against Officers Hendrix and Ward to support his claims that they violated Article 24 of the Maryland Declaration of Rights. (2d Am. Compl. ¶¶ 228, 289). Officers Hendrix and Ward move to dismiss these claims for the same reasons they seek dismissal of Bumgardner's excessive force, false arrest, and false imprisonment claims. The standards for analyzing claims under Article 24 are "the same as for analyzing Fourth Amendment claims." <u>Henry v. Purnell</u>, 652 F.3d 524, 536 (4th Cir. 2011). For the same reasons the

Court concluded that Bumgardner adequately states claims against Officers Hendrix and Ward for violations of the Fourth Amendment, the Court also concludes that he sufficiently states claims under Article 24. Accordingly, the Court will deny the Motion to Dismiss as to Counts 16 and 24.

**B.    Motion to Dismiss Cross-Claim**

Officers Hendrix and Ward contend that BPD's Cross-Claim is procedurally improper under Rule 13(g) and substantively improper under the Declaratory Judgment Act. BPD counters that its Cross-Claim is a permissible contingent cross-claim under Rule 13(g) and that this Court has subject-matter jurisdiction over its cross-claim for declaratory relief. The Court agrees with BPD.

The Declaratory Judgment Act (the "Act"), 28 U.S.C. § 2201 (2018), grants federal district courts discretion to entertain declaratory judgment actions. See Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). The Act provides that district courts "may declare the rights and other legal relations of any interested party seeking such declaration" provided that a "case or controversy" exists. § 2201(a); see also Icarom, PLC v. Howard Cty., 904 F.Supp. 454, 457 (D.Md. 1995). A case or controversy exists if "the facts alleged, under the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Icarom, 904 F.Supp. at 457 (quoting Md. Casualty Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)).

A federal court may exercise jurisdiction over a declaratory judgment action if: (1) "the complaint alleges an 'actual controversy' between the parties 'of sufficient immediacy and reality to warrant issuance of a declaratory judgment'"; (2) "the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction)"; and (3) "the court does not abuse its discretion in its exercise of jurisdiction." Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 592 (4th Cir. 2004) (first quoting 28 U.S.C. § 2201; then quoting Cont'l Cas. Co. v. Fuscardo, 35 F.3d 963, 965 (4th Cir. 1994); and then quoting N. Jefferson Square Assocs. v. Va. Hous. Dev. Auth., 94 F.Supp.2d 709, 714 (E.D.Va. 2000)). Officers Hendrix and Ward only dispute the first and third elements. Accordingly, the Court will confine its analysis to those elements.

A party may bring a cross-claim against a co-party "if the claim arises out of the transaction or occurrence that is the subject matter of the original action." Fed.R.Civ.P. 13(g). Importantly, "[t]he crossclaim may include a claim that the coparty is or may be liable to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant." Id. (emphases added). The United States Court of Appeals for the Tenth Circuit has held that Rule 13(g) "is not limited by text or purpose to definite or matured claims" and "is broad enough to include a claim of a contingent nature, the ultimate outcome of which depends upon the determination of other features or issues in the case." Providential Dev. Co. v. U.S. Steel Co., 236 F.2d 277, 281 (10th Cir. 1956). In Providential, the Tenth Circuit further stated that Rule 13(g) is "remedial in nature,

intended to promote the expeditious and economical adjudication in a single action of the entire subject matter arising from one set of facts" and therefore should be "liberally construed." 236 F.2d at 281. This Court has endorsed the <u>Providential</u> court's interpretation. <u>See</u> <u>Netzer v. Union Carbide Corp.</u>, No. WDQ-14-1589, 2014 WL 5587040, at *3 n.15 (D.Md. Oct. 31, 2014).

Here, BPD's Cross-Claim fits within the broad category of cross-claims Rule 13(g) allows. The relief BPD seeks—a declaration that BPD does not have to indemnify Officer Defendants—may seem at first to be the reverse of what indemnification cross-claims typically seek—a finding that a coparty must pay for any liability the cross-claimant has to the plaintiff. <u>See, e.g.</u>, <u>Day v. Robbins</u>, 179 F.Supp.3d 538, 541 (D.Md. 2016). But as with cross-claims seeking indemnification, this Cross-Claim "depends upon the determination of other features or issues in the case," including the plaintiff's claim against the cross-claimant. <u>Providential</u>, 236 F.2d at 281. Determining whether Officer Defendants were acting within the scope of their employment will, in turn, determine whether BPD is liable for Officer Defendants' actions. In the same way, Rule 13(g)'s allowance for contingent cross-claims also addresses Officers Hendrix and Ward's concern that the declaration BPD seeks is based on alleged, as opposed to established, facts. Consistent with other courts' treatment of 13(g) cross-claims, and as BPD concedes here, resolution of BPD's Cross-Claim will naturally follow a jury's determination of the facts set out in Bumgardner's Second Amended Complaint. <u>See, e.g.</u>, <u>J.P. v. Williamson Cty. Educ. Servs.</u>, No. 16-CV-00879-NJR-MAB, 2019 WL 1254761, at *2 (S.D.Ill. Mar.

19, 2019). Accordingly, permitting BPD's Cross-Claim to proceed directly behind Bumgardner's claims serves the purposes of Rule 13(g), as articulated in Providential.

BPD also adequately alleges an actual controversy of sufficient immediacy and reality between the parties under the Declaratory Judgment Act. The Cross-Claim cites to specific paragraphs of the Second Amended Complaint related to Officer Defendants' conduct and seeks a declaration that the alleged conduct was not within the scope of their employment with BPD. Whether Officer Defendants were, in fact, acting within the scope of their employment is an actual controversy that will be resolved via Bumgardner's claims. BPD's Cross-Claim, which stems from that same factual predicate, therefore, also alleges an actual controversy by operation of 13(g).

Under the third declaratory judgment element, a federal court may, in its discretion, hear a declaratory judgment action when the declaratory relief sought: (1) "will serve a useful purpose in clarifying and settling the legal relations in issue"; and (2) "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Icarom, 904 F.Supp. at 458 (quoting Fuscardo, 35 F.3d at 965).

Here, once the underlying facts are determined, as in other 13(g) indemnification cases, a declaratory judgment will serve a useful purpose. BPD will know whether it must indemnify Officer Defendants against any damages to Bumgardner and not have to await, then defend, a follow-on claim from Officer Defendants. Likewise, a declaratory judgment would afford relief from the uncertainty regarding whether BPD must indemnify Officer Defendants. This useful purpose and relief from uncertainty will not

come before Bumgardner's claims are fully litigated, but accounting for Rule 13(g), the Court will exercise its discretion to consider BPD's Cross-Claim at that time.

In sum, the Court concludes that BPD's Cross-Claim is proper under Rule 13(g) and the Declaratory Judgment Act. Accordingly, the Court will deny Officers Hendrix and Ward's Motion to Dismiss Cross-Claim.

## III. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Officers Hendrix and Ward's Motion to Dismiss Counts 9–24 and 33 of Plaintiff's Amended Complaint (ECF No. 72). The Court will also deny the Motion to Dismiss the Baltimore City Police Department's Cross-Claim (ECF No. 91). A separate order follows.

Entered this 29th day of August, 2019.

_____/s/_____
George L. Russell, III
United States District Judge